UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES B. GILL, SR.,

          Plaintiff,

v.                                               Case No. 24-cv-1126-pp

CHRIS S. BUESGEN, *et al.*,

          Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), GRANTING PLAINTIFF'S MOTION TO REMOVE PARTY (DKT. NO. 6), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE A CLAIM**

---

Plaintiff Charles B. Gill, Sr., who is incarcerated at Stanley Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants were deliberately indifferent to his serious medical need. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 3, and to remove party, dkt. no. 6, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On September 23, 2024, the court ordered the plaintiff to pay an initial partial filing fee of $6.94. Dkt. No. 7. The court received that fee on October 8, 2024. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The complaint names as defendants Warden Chris S. Buesgen, Nurse Jamie Barker and Nurse Practitioner Leslie McKee. Dkt. No. 1 at 1–2. But on September 19, 2024, the plaintiff filed a motion to dismiss defendant McKee because he had determined that she "never knew about [his] medical problem" or his complaints that led to this lawsuit. Dkt. No. 6. The court will grant the plaintiff's motion and dismiss defendant McKee. The plaintiff sues the remaining defendants in their individual and official capacities. Dkt. No. 1 at 2.

The plaintiff alleges that he suffers from acid reflux and Gastric Esophagus Reflux Disease (GERD), for which he takes the medication Famotidine. Id. at 2. He alleges that in July or August 2024, the medication stopped working, and he experienced burning in his throat and regurgitation after eating. Id. He says his food "repeated on" him when he ate, and if he did not eat, he "just got a nice amount of stomach acid that came up into [his] mouth forcing [him] to spit it out." Id. He says this "burned [his] throat" and "did wake [him] up at times because [he] couldn't breathe and was choking on nice amounts of food in [his] throat." Id.

On August 5, 2024, he sent a request for treatment to the Health Services Unit (HSU). Id. On August 9, 2024, Nurse Flaig (not a defendant) responded that she had forwarded the request to the plaintiff's provider for review. Id. The plaintiff attached the request and response as an exhibit to his complaint. Dkt. No. 1-1 at 1–2. By August 15, 2024, the plaintiff had not heard from his provider (McKee), so he sent an Interview/Information request to the HSU. Dkt. No. 1 at 2. He also wrote to Warden Buesgen and Barker, who he says is the HSU Supervisor. Id. He attached this request, which is addressed to "Mrs. Barker." Dkt. No. 1-1 at 3.

On August 17, 2024, the plaintiff filed an institutional complaint about the delay in treatment. Dkt. No. 1 at 2. The next day, Nurse Inzerillo (not a defendant) called the plaintiff to the HSU for an evaluation and provided him regular strength antacid tablets. Id. Inzerillo also responded to his interview

request and noted that the plaintiff had a "[p]rovider referral in place; seen in Nurse sick call today." Dkt. No. 1-1 at 4.

On August 19, 2024, Buesgen responded to the plaintiff's letter, advising the plaintiff that he was not a medical professional and to address his medical concerns through the HSU. Dkt. No. 1 at 3; Dkt. No. 1-1 at 8. The same day, a complaint examiner reviewed the plaintiff's complaint about the delay in treatment and recommended affirming the complaint, noting that the plaintiff was not seen until August 18, 2024. Dkt. No. 1 at 3; Dkt. No. 1-1 at 5. The reviewing authority accepted that recommendation. Dkt. No. 1 at 3; Dkt. No. 1-1 at 6. The plaintiff insists that Barker knew about his issue before August 18 because the complaint examiner contacted her about the plaintiff's complaint, and Barker "explained everything to" the complaint examiner. Dkt. No. 1 at 3.

On August 23, 2024, McKee sent the plaintiff a note advising him that she was discontinuing Famotidine and ordering a replacement for his GERD symptoms. Id. The plaintiff received this new medication the next day. Id. He says this new medication "actually works." Id.

The plaintiff seeks to proceed against Buesgen and Barker under the Eighth Amendment. Id. He seeks declaratory relief and $350,000 in damages "against each defendant jointly." Id.

C. Analysis

The court reviews the plaintiff's allegations regarding the denial of medical care under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). But not "every

claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Id. at 105. To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." Gutierrez v. Peters, 111 F.3d 1364, 1372 (7th Cir. 1997). To satisfy the objective component, the plaintiff must show that he had a medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

"[D]eliberate indifference describes a state of mind more blameworthy than negligence." Farmer, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an incarcerated person's health or safety and disregards that risk. Id. at 837; Perez, 792 F.3d at 776. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)).

The plaintiff alleges that he suffers from acid reflux and GERD, which can "produce persistent, agonizing pain and discomfort." Miller v. Campanella,

794 F.3d 878, 880 (7th Cir. 2015). It "can also produce 'serious complications. Esophagitis can occur as a result of too much stomach acid in the esophagus.'" Id. (quoting WebMD, Heartburn/GERD Health Center, "What Are the Complications of Long–Term GERD?" www.webmd.com/heartburn–gerd/guide/reflux–disease-gerd–1?page=4). The Seventh Circuit has held that "[l]eaving a serious case of GERD untreated for two months is a dereliction of medical duty" and violates the Eighth Amendment. Id.

But the plaintiff does not allege that he suffers from severe GERD or that he suffered consequences from this condition. He alleges that for twelve days, he experienced acid in his mouth and had occasional difficulty sleeping. He says it took him writing twice to the HSU before he was provided treatment. That treatment was over-the-counter, regular strength antacids (TUMS brand). See Dkt. No. 1-1 at 7. A nurse provided the plaintiff this non-prescription medication. His provider changed his prescription medication a few days later to something that the plaintiff says controls his GERD symptoms. In total, the plaintiff says he experienced nineteen days of discomfort from his medication not working. These allegations do not suggest the plaintiff faced an "excessive risk of harm" from his GERD symptoms.

Nonetheless, the court is aware of cases in which the Seventh Circuit has discussed GERD and found it to be a potentially serious medical condition that may form the basis of an Eighth Amendment claim. See Rowe v. Gibson, 798 F.3d 622, 623 (7th Cir. 2015); Miller, 794 F.3d at 880. The court will give the

plaintiff the benefit of the doubt and accept that his acid reflux and GERD symptoms may have constituted a serious medical condition.

But even accepting that the plaintiff's GERD symptoms may have been an objectively serious medical need, the plaintiff does not allege facts suggesting that either remaining defendant was aware of and exhibited deliberate indifference to his medical need. The plaintiff's allegations and exhibits show that he originally complained about his medication not working on August 5, 2024, when he sent his first HSU request. A non-defendant nurse triaged that request and forwarded it to the plaintiff's provider for review. The plaintiff says that this nurse "had in fact done her job" and sent the referral to the plaintiff's provider. Dkt. No. 1 at 2. The plaintiff's provider is McKee, who the plaintiff has told the court he no longer wishes to sue in this lawsuit. Dkt. No. 6. So the only two people who knew about the plaintiff's issue on August 5, 2024 were a nurse whom the plaintiff has not named as a defendant and his provider whom he expressly asks the court to remove as a defendant.

The plaintiff does not allege, and his exhibits do not show, that anyone else was aware of his medical issue until August 15, 2024, when he sent his second request and notice of his issue to the HSU and Buesgen. He was seen for treatment in the HSU only three days later, one day after he filed his institutional complaint about the delay. Although the complaint examiner notes that she spoke with Barker, she does not say anything about Barker being aware before she spoke with her about the plaintiff's medical issue. Even if Barker was aware of the plaintiff's medical issue, she was not required to

provide immediate medical treatment for his non-emergent medical issue. See Moore v. Williams, 835 F. App'x 143, 145 (7th Cir. 2021) (citing Knight v. Wiseman, 590 F.3d 458, 466 (7th Cir. 2009)) (noting that "the Constitution does not mandate immediate care"). As another court in this circuit has explained, "Not all serious medical conditions constitute medical emergencies that require immediate medical attention, and most medical problems may be adequately addressed through the normal prison sick call procedures. [The plaintiff's] acid reflux is one such condition." Logan v. Cady, Case No. 313CV01163SMYPMF, 2016 WL 4493353, at *3 (S.D. Ill. Aug. 26, 2016). Barker's alleged failure to immediately treat the plaintiff's GERD symptoms and the resulting three-day wait for nursing treatment do not constitute deliberate indifference to an excessive risk to the plaintiff's health.

Nor do the plaintiff's allegations show that Buesgen was deliberately indifferent to his medical condition. The warden responded to the plaintiff's letter about his concern the same day that the complaint examiner reviewed the plaintiff's institutional complaint (August 19, 2024) and reminded him to use the HSU procedures to request treatment. Buesgen noted that he was "not qualified to make medical judgments that override that of institution medical providers." Dkt. No. 1-1 at 8. Buesgen did not "have a free-floating obligation to put things to rights" merely because he is the warden. Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). He "was entitled to defer to the judgment of [Stanley] health professionals so long as he did not ignore [the plaintiff]"). See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010). Given that by the

9

Case 2:24-cv-01126-PP   Filed 11/07/24   Page 9 of 12   Document 8

time of Buesgen's August 19 letter, a nurse had seen and treated the plaintiff, the plaintiff cannot demonstrate that he was being ignored. Nor can he demonstrate that Buesgen was deliberately indifferent to the plaintiff's GERD symptoms by deferring to medical professionals and the HSU's medical request procedures.

The court will dismiss the complaint. District courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, but the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of facts surrounding his claims, and the attached exhibits provide ample additional information. The court finds that further information would not alter its conclusion that the plaintiff's allegations do not state an Eighth Amendment claim. The court will not allow the plaintiff to file an amended complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **GRANTS** the plaintiff's motion to remove Leslie McKee as a party. Dkt. No. 6. The court **DISMISSES** McKee as a defendant from this case.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).[1]

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$343.06** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Stanley Correctional Institution, where the plaintiff is confined.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the

---

[1] This is the plaintiff's second incurred strike. See Gill v. Woelfel, *et al.*, 23-cv-423-pp (dismissed Nov. 13, 2023, for failure to state a claim).

$605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff another "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 7th day of November, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**